IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

VS.                              CASE NO. 3:16-CR-30012-PKH-MEF-2

DAMON WAYNE "DEE" CHARLTON                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 filed on April 23, 2018. (ECF No. 128). The United States filed its response on June 19, 2018. (ECF No. 140). Defendant did not file a reply. The matter is ready for report and recommendation.

### I. Background

On October 5, 2016, the Defendant, Damon Wayne "Dee" Charlton ("Charlton")[1], was named in an Indictment charging him with conspiracy to distribute methamphetamine (Count I), and two counts of use of a communications facility, namely, a cell phone, in committing, causing and facilitating a felony drug offense, namely, the distribution of methamphetamine (Counts III and IV). (ECF No. 1). Charlton was arrested on October 27, 2016, and he appeared for arraignment on October 31, 2016, at which time he entered a not guilty plea to the Indictment. (ECF No. 13). Phillip A. Moon ("Moon"), a CJA Panel attorney, was appointed to represent Charlton. (ECF No. 13, Text Only Minute Entry; and, Text Only Order appointing counsel entered October 31, 2016).

On December 29, 2016, Charlton appeared with counsel before the Hon. P. K. Holmes, III,

---

[1] Defendant was named Dammon Wayne "Dee" Charlton in the Indictment. The spelling of his name was corrected by an Order entered on November 1, 2017. (ECF No. 106).

Chief United States District Judge, for a change of plea hearing. (ECF No. 53). A written Plea Agreement (ECF No. 54) was presented to the Court, and Charlton pleaded guilty to Counts III and IV of the Indictment charging him with use of a communications facility, namely, a cell phone, in committing, causing and facilitating a felony drug offense, namely, the distribution of methamphetamine. The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR"). (ECF No. 53).

An initial PSR was prepared by the United States Probation Office on July 27, 2017. (ECF No. 67). On August 7, 2017, the Government advised that it had no objections to the PSR. (ECF No. 76). On August 9, 2017, Charlton advised that he had no objections to the PSR. (ECF No. 79).

On August 15, 2017, a final PSR was submitted to the Court. (ECF No. 82). The final PSR determined that Charlton was accountable for 1.06 kilograms of a mixture of methamphetamine. (ECF No. 82, ¶¶ 46, 47). Based on that drug quantity, Charlton's base offense level was determined to be 30. (ECF No. 82, ¶ 52). After a three-level reduction for acceptance of responsibility, Charlton's total offense level was determined to be 27. (ECF No. 82, ¶¶ 59-61). Charlton had a criminal history score of two, placing him in criminal history category II. (ECF No. 82, ¶ 78). The statutory maximum term of imprisonment on each count is four years. (ECF No. 82, ¶ 107). Based upon a total offense level of 27 and a criminal history category of II, Charlton's advisory guidelines range was determined to be 78 to 97 months imprisonment; however, the statutory authorized maximum is 48 month on each count, for a total of 96 months. Therefore, the guidelines imprisonment range is 78 to 96 months. If the sentence imposed on the count carrying the highest maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence

equal to the total punishment.  (ECF No. 82, ¶ 108).

Charlton appeared for sentencing on November 7, 2017.  (ECF No. 108).  The Court made inquiry that Charlton was satisfied with his counsel; the PSR was reviewed and adopted; the Government's motion for a two-level downward departure for substantial assistance was granted; final approval of the Plea Agreement was expressed; Charlton and his counsel were afforded the opportunity to speak and make a statement; and, the Court imposed a guidelines sentence of 48 months imprisonment for Count III, then 15 months imprisonment for Count IV, to run consecutively, one year supervised release on each count, to run concurrently, no fine, and a $200.00 special assessment.  (ECF No. 108).  Judgment was entered by the Court on November 7, 2017. (ECF No. 113).

Charlton did not pursue a direct appeal from the Judgment.

On April 23, 2018, Charlton filed his *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "motion").  (ECF No. 128).  The motion sets forth four grounds for relief: (1) ineffective assistance of counsel for failing to object to Counts III and IV because neither count alleges the names of both participants and some sort of statement of what was being facilitated with the controlled substance which constitutes a felony; (2) ineffective assistance of counsel for failing to explain that using a telephone to determine the location of money to be paid for narcotics (Count III) and whether the sale of narcotics has been made (Count IV) is not an act facilitating the commission of a narcotics offense, and for advising him to plead guilty to these charges in light of this deficiency in the Government's proof; (3) ineffective assistance of counsel for failing to object to the Government's failure to prove conspiracy to distribute methamphetamine, an essential element of the § 843(b) charges, and for counseling Charlton to plead guilty to these

charges in the face of this deficit in proof; and, (4) ineffective assistance of counsel for failing to argue that Counts III and IV should be grouped together under U.S.S.G. § 3D1.2 for purposes of sentencing. (ECF No. 128, p. 3). The United States' response to the motion was filed on June 19, 2018. (ECF No. 140). Charlton did not file a reply.

## II. Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Charlton's § 2255 motion and the files and records of this case conclusively shows that Charlton is not entitled to relief, and the undersigned recommends the denial and dismissal of his § 2255 motion with prejudice without an evidentiary hearing.

### A. Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255. This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the

-4-

Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

An un-appealed criminal judgment becomes final when the time for filing a direct appeal expires. *Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n. 2 (8th Cir. 2008). The Judgment in this case was entered on November 7, 2017. (ECF No. 113). Had Charlton wished to file an appeal, he was required to do so within 14 days. *See* Fed. R. App. P. 4(b)(1)(A)(i). Charlton did not file an appeal, and his conviction thus became final on November 21, 2017. *See Murray v. United States*, 313 F.App'x 924 (8th Cir. 2009). From that date, Charlton had one year, or until November 21, 2018, to timely file a § 2255 habeas petition. Charlton filed his § 2255 motion on April 23, 2018, well within the one year limitations period.

### B.  Ineffective Assistance of Counsel Claims

### 1.  Standard of Review

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

## 2. Effect of Charlton's Guilty Pleas

Charlton pleaded guilty to the two offenses of conviction. When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). As the Court in *Tollett* articulated:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in *McMann*[2].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id*. at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). A defendant has a heavy burden to overcome those admissions and

---

[2] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

show that his guilty plea was involuntary.  *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

In the present case, Charlton was represented by experienced appointed counsel, Phillip A. Moon, a CJA Panel Attorney, throughout the criminal proceedings leading to and including the change of plea hearing.  Moon negotiated a written Plea Agreement with the Assistant United States Attorney prosecuting the case, and Moon carefully reviewed the Plea Agreement with Charlton before obtaining Charlton's signature on it.  (ECF No. 54, ¶¶ 28(a), 29(a)).  The Plea Agreement informed Charlton of the counts of conviction, being Counts III and IV of the Indictment (charging Charlton with use of a communication facility to facilitate the distribution of methamphetamine, in violation of 18 U.S.C. § 843(b)), and the count and forfeiture allegation to be dismissed.  (*Id.*, ¶ 1).  Charlton acknowledged that he fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which he was pleading guilty; and, he admitted the factual basis for the plea.  (*Id.*, ¶ 2).  The Plea Agreement advised Charlton of his constitutional and statutory rights, including the right to persist in his plea of not guilty.  (*Id.*, ¶ 3).  The Plea Agreement also informed Charlton that at sentencing the Court will be permitted to consider "all relevant information with respect to the Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines."  (*Id.*, ¶ 17).

By signing the Plea Agreement, Charlton acknowledged that: he fully understood the Plea Agreement (*Id.*, ¶ 28(b)); he was satisfied with the legal services provided by defense counsel in connection with the Plea Agreement and matters related to it (*Id.*, ¶ 28(d)); and, he entered into the

Plea Agreement freely, voluntarily, and without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion (*Id*., ¶ 28 (e)).

During the change of plea hearing on December 29, 2016, Charlton was sworn on oath and examined by the Court about the offenses and the Plea Agreement.  The Court inquired of Charlton about his age and level of education; whether Charlton was under the influence of alcohol or drugs, and whether Charlton was able to comprehend the proceedings; and, the possible severity of sentence was explained, as were Charlton's constitutional and statutory rights.  (ECF No. 136, pp. 3-4, 9). Charlton stated he understood that at the sentencing hearing the government can bring to the Court's attention, and the Court will consider, all past and present information about his background, his character, and any criminal conduct including the dismissed counts of the Indictment.  (*Id*., p. 11). A factual basis for the pleas was set forth (*Id*., pp. 15-16), and both Charlton and his counsel stated that they believed the Government could prove those facts (*Id*., pp. 16-17).  Upon such inquiry in open court, the Court determined that Charlton's guilty pleas to Counts III and IV of the Indictment were voluntary and intelligent, and that there was a factual basis to support the guilty pleas.  (*Id*., p. 20).

Notably, Charlton does not allege in his § 2255 Motion that his claims of ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent, and invalid; but rather, he claims that had his counsel pursued certain aspects of the case differently the Indictment may have been dismissed.  Since Charlton's § 2255 Motion does not challenge the voluntary and intelligent character of his guilty pleas, it is plainly deficient and subject to summary dismissal.  Counsel's alleged failure to correctly appraise the constitutional significance of certain facts, or counsel's alleged failure to pursue a particular factual inquiry that may have uncovered some possible

constitutional infirmity in the proceedings, are both insufficient to support vacating a guilty plea voluntarily and intelligently entered. *Tollett*, 411 U.S. at 267. Further, to the extent that the allegations of Charlton's § 2255 Motion may be construed to indirectly challenge the voluntary and intelligent character of his guilty pleas, the claims alleged lack merit and are subject to dismissal.

### 3. Failure to Challenge Counts III and IV of the Indictment

Charlton argues in Ground One of his § 2255 Motion that his counsel was ineffective for not objecting to Counts III and IV because neither count alleges the names of both participants and some sort of statement of what was being facilitated with the controlled substance felony. (ECF No. 128, pp. 3, 5, 8-9). Charlton cites *United States v. Hinkle*, 637 F.2d 1154 (7th Cir. 1981) in support of his argument that Counts III and IV of the Indictment fail to meet constitutional requirements. Charlton's reliance on *Hinkle* is misplaced.

It has long been held that "the sufficiency of an indictment or information is not open to collateral attack after conviction unless it appears that the circumstances are exceptional, that the questions raised are of 'large importance', that the need for the remedy sought is apparent, and that the offense charged was one of which the sentencing court manifestly had no jurisdiction." *Keto v. United States*, 189 F.2d 247, 251 (8th Cir. 1951). That high standard has not been met by Charlton in the present case.

An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal citations omitted). An indictment issued for violation of 21 U.S.C. § 843(b) must specify the type of communication facility used, the date on

which it was used, the controlled substance involved, and some sort of statement of what is being facilitated with that controlled substance which constitutes a felony. *Hinkle*, 637 F.2d at 1158.

In *Hinkle*, the indictment charged defendant with six counts of using a telephone to facilitate acts constituting a felony under 21 U.S.C. § 841(a)(1). These charges were all identical, except for the date, and read as follows:

> "On or about the 30th day of August, 1979, in St. Clair County, in the Southern District of Illinois, KAREN L. HINKLE, defendant herein, did knowingly and intentionally use a communications facility, that is, a telephone, to facilitate acts constituting a felony under Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 843(b)."

Absent from that charging language is a statement of the specific controlled substance involved and what type of criminal act Hinkle was facilitating. The Court in *Hinkle* noted: "appellant only knows that she is charged with using a telephone on certain days to facilitate in some manner the doing of *one of six types of acts*, any of which might involve *any one of one hundred and forty-two controlled substances*. The indictment tells her nothing about the gravamen of the alleged offense: what she attempted to facilitate with which controlled substance." *Id*. (emphasis added).

No such deficiencies are present here. The Indictment includes the name of the party to be charged; the date and time of each communication; the type of communication facility used, a cell phone; the specific controlled substance involved, namely methamphetamine; and, the felony that was being facilitated, that is, the distribution of methamphetamine. (ECF No. 1, p. 2). The Indictment sufficiently informed Charlton of the charges against which he must defend, and it enabled him to plead an acquittal or conviction in bar of future prosecutions for the same offenses. While the Indictment does not include the names of both participants of the telephone calls, the

-11-

absence of such additional information does not render the Indictment deficient.

Further, Charlton stipulated to the factual basis for Counts III and IV in his written Plea Agreement, and he acknowledged that the United States could prove beyond a reasonable doubt that he used an interstate communication facility, a cell phone, to further a drug trafficking crime, that is, the distribution of methamphetamine.  (ECF No. 54, ¶ 2(A)-(J)).

Since the Indictment meets all constitutional requirements, Charlton's claim of ineffective assistance of counsel for failing to object to it fails.  It cannot be ineffective assistance not to raise a meritless argument.  *Larson v. United States*,  905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

### 4.  Failure to Explain Deficiencies in the Government's Proof

Charlton next claims his counsel was ineffective for failing to object and explain to him that using a telephone to determine the location of money to be paid for narcotics and to determine whether the sale of narcotics has occurred are not acts facilitating the commission of a narcotics offense, and in advising him to plead guilty given these deficiencies in the Government's proof. (ECF No. 128, pp. 3, 5, 9).  He argues that "[n]either call addressed drug distribution in anything but the most attenuated sense," and that "the calls fail to show any involvement by Charlton in the organization."  (ECF No. 128, p. 9).  He relies on *United States v. Rivera*, 775 F.2d 1559 (11th Cir. 1985), *cert. denied* 475 U.S. 1051 (1989), to support his claim.  *Rivera* affords him no relief, and his claim is unsustainable.

The Court in *Rivera* held that in order to establish the facilitation element of a violation of 21 U.S.C. § 843(b), the Government must show that the telephone call comes within the common meaning of facilitate - to make easier or less difficult, or to assist or aid.  775 F.2d at 1562 (internal

quotation marks and citations omitted). There, the Court found that the defendant's calls were simply to find out whether any sales had been made, and if so, where was the money the defendant was supposed to get. The Court concluded, "[w]e fail to see how [defendant's] calls can be said to make easier or less difficult, or to assist or aid the possession with intent to distribute the [controlled substance]." *Id*. Contrary to Charlton's assertions, his two charged cell phone calls did more than simply inquire whether any drug sale had been made and where the money was.

The Eighth Circuit has consistently found that telephone use discussing drug trafficking operations constituted "facilitating" an underlying felony narcotics offense in violation of 21 U.S.C. § 843(b). *See United States v. Almeida-Olivas*, 865 F.3d 1060, 1063 (8th Cir. 2017) (holding that evidence of multiple intercepted phone calls between the defendant and conspirators in which they discussed the debt a conspirator owed to defendant's brother for methamphetamine has been found to support a conviction for use of a communication device to facilitate distribution of methamphetamine in violation of 21 U.S.C. § 843(b)); *United States v. Jones,* 801 F.2d 304, 311-312 (8th Cir. 1986) (finding evidence of intercepted phone calls sufficiently supported an § 843(b) conviction).

The facts in the present case, to which Charlton stipulated in his Plea Agreement, show that Charlton facilitated the distribution of methamphetamine through numerous text messages and phone calls with co-conspirators. Intercepted text messages and phone calls evidenced that Charlton was arranging a meeting place to pay the co-conspirators money owed to them from methamphetamine sales, and that Charlton was arranging to go pick up more methamphetamine with the co-conspirators. (ECF No. 54, ¶¶ 2(C)-(H)). Charlton acknowledged that he fully discussed these facts and the elements of the crimes to which he was pleading guilty with his counsel. (*Id*., ¶ 2). Charlton

also stated in his Plea Agreement that the Government could prove beyond a reasonable doubt that he used a cell phone to facilitate the distribution of methamphetamine.  (*Id*., ¶ 2(J)).

As admitted by Charlton in the stipulated facts set forth in his Plea Agreement, and as he confirmed during his change of plea hearing, the cell phone calls which formed the basis for Counts III and IV of the Indictment did facilitate - make easier or less difficult, or to assist or aid - the distribution of methamphetamine.  Charlton has failed to show that his counsel's performance was constitutionally deficient for failing to argue that the evidence of Charlton's telephone communications did not support the § 843(b) violations.  As noted above, counsel cannot be faulted for not raising a meritless argument.  *Larson*, 905 F.2d at 219; *Rodriguez*, 17 F.3d at 226.

### 5.  Failure to Challenge the Lack of Proof of Conspiracy to Support the Telephone Facilitation Charges

Charlton's third ground for relief is his claim that counsel was ineffective for not objecting to the Government's failure to prove conspiracy to distribute methamphetamine, which he contends is an essential element of the § 843(b) charges, and for counseling Charlton to plead guilty to these charges despite this deficit in proof.  (ECF No. 128, pp. 3, 5, 10).  He argues that, at best, the Government's showing at his change of plea "shows exploratory and inconclusive, or preliminary, discussions and negotiations, none of which is sufficient to establish an agreement."  (*Id*., p. 10). He contends that the communications concern his own drug use, and "there was no explicit reference to anything that would have pertained to facilitation or ongoing distribution of methamphetamine." (*Id*.).  Charlton's argument finds no support in the record.

To convict a defendant for use of a telephone to facilitate a conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 843(b), the Government has to prove that the

-14-

defendant: (1) knowingly or intentionally (2) used a telephone (3) to facilitate the conspiracy to distribute methamphetamine. *Almeida-Olivas*, 865 F.3d at 1063. As noted by the Government, it need only prove the underlying offense alleged in a § 843(b) prosecution by a preponderance of the evidence. *United States v. Mims*, 812 F.2d 1068, 1077 (8th Cir. 1987).

In *Almeida-Olivas*, the Court found phone calls during which the defendant and a co-conspirator discussed a debt owed by the co-conspirator to defendant's brother for methamphetamine to be sufficient to support Almeida-Olivas's conviction for use of a communication device to facilitate the conspiracy. *Almeida-Olivas*, 865 F.3d at 1063.

In *Mims*, a defendant made repeated calls and offered definite sums of money for some quantity of heroin, indicating he had taken action to secure the money. Concluding that these acts were "directly aimed at the commission of the offense," the Court there found them sufficient to support three of the defendant's § 843(b) convictions. *Mims*, 812 F.2d at 1078.

Here, Charlton acknowledged the purpose of the telephone communications on July 5, 2016 (Count III) were to set up a meeting to facilitate getting payment from proceeds of methamphetamine sales to Charlton's co-conspirator. (ECF No. 54, ¶¶ 2(C)-(E)). Charlton also acknowledged that the telephone communications on July 6, 2016 (Count IV) were to set up a meeting in Berryville, Arkansas for the purpose of obtaining methamphetamine on credit from a co-conspirator for later sale. (ECF No. 54, ¶ 2(H)). Charlton admitted the Government could prove beyond a reasonable doubt that he used an interstate communication facility, a cell phone, to further a drug trafficking crime, namely, the distribution of methamphetamine. (ECF No. 54, ¶ 2(J)). Upon hearing the Government's statement of the factual basis for his guilty pleas at the change of plea hearing, Charlton again admitted the Government could prove those facts. (ECF No. 136, pp. 15-16).

-15-

Contrary to his claim now that these telephone communications only concerned his own drug use, and that there was no explicit reference to the facilitation of methamphetamine distribution, Charlton's admissions in his Plea Agreement and during his change of plea hearing do explicitly confirm that the telephone communications were to facilitate the distribution of methamphetamine as charged in Counts III and IV of the Indictment. Thus, the intercepted text messages and phone calls between Charlton and the co-conspirator, as set forth in the stipulated facts of the Plea Agreement and confirmed during Charlton's change of plea, satisfy the legal standard of proof to support the § 843(b) convictions.

Accordingly, Charlton has failed to show that his counsel was ineffective for failing to object to proof of the elements of the § 843(b) charges brought against Charlton.

### 6.   Failure to Make a Grouping Argument Under U.S.S.G. § 3D1.2

For his final claim, Charlton asserts that his counsel was ineffective for failing to argue that Counts III and IV should be grouped together under U.S.S.G. § 3D1.2 for purposes of sentencing. (ECF No. 128, pp. 3, 13-17).  He argues that grouping was appropriate because (1) both counts were part of a common plan or scheme, (2) a single course of conduct intended to harm the same victim - society at large, (3) they were part of a common criminal objective, and (4) they harmed the same societal interest.  (*Id.*, p. 14).  The Government responds that Charlton's claim is not cognizable under § 2255 and represents a misunderstanding of the application of the Sentencing Guidelines.

Guidelines interpretation claims are simply not cognizable under § 2255.  Few sentencing errors are of a constitutional nature that can support a § 2255 claim.  *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 348-50 (1992).  *Sawyer* has been limited to capital cases, and allegations of sentencing guidelines errors are not cognizable under § 2255 unless the sentence imposed exceeds the statutory

maximum. *See Sun Bear v. United States*, 644 F.3d 700, 708 (8th Cir. 2011) (en banc) (citations omitted) (§ 2255 does not apply to garden-variety Sentencing Guideline application issues); *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (ordinary questions of guideline interpretation falling short of the "miscarriage of justice" standard do not present a proper § 2255 claim). Here, Charlton's sentence of 63 months imprisonment falls within the statutory maximum sentence of 96 months provided by 21 U.S.C. § 843(d)(1) for both counts. Accordingly, Charlton's guidelines misapplication claim is not cognizable as a stand-alone claim in this § 2255 proceeding.

The Government contends that Charlton's grouping claim amounts to nothing more than appellate argument masked as an ineffective assistance of counsel claim. (ECF No. 140, p. 9). The undersigned agrees. Charlton had the opportunity to review the PSR and discuss it with his counsel. (ECF No. 137, p. 3). Charlton made no objections to the PSR. (ECF No. 82-1). At sentencing, the Court granted the Government's motion for a two-level downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1. (ECF No. 137, pp. 5-6). This lowered the applicable guidelines range from 78 to 96 months imprisonment down to 63 to 78 months imprisonment. (*Id.*, p. 6). The Court imposed a sentence of 48 months imprisonment on Count III, and 15 months on Count IV, to run consecutively, for a total of 63 months at the low end of the guidelines range. (*Id.*, p. 12). Charlton sought no relief from any perceived Sentencing Guidelines misapplication errors on direct appeal. As a result, Charlton is barred from raising this alleged sentencing error in a § 2255 proceeding unless he can show cause and prejudice to excuse his procedural default. *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). Charlton made no attempt to show cause and prejudice. Accordingly, Charlton is barred from raising this sentencing issue for the first time in the guise of an ineffective assistance of counsel claim. *See Love v. United States*, No. 4:05CV703 RWS, 2005

WL 2621542, at *1 (E.D. Mo. Oct. 14, 2005).

Even if Charlton's claim was not procedurally barred, it fails as a matter of fact and law.

The Court did not calculate Charlton's sentence by grouping multiple counts of conviction under U.S.S.G. § 3D1.1(a).  The PSR reported that Charlton was accountable for 1.06 kilograms of a mixture of methamphetamine.  (ECF No. 82, ¶¶ 46, 47).  As noted above, Charlton made no objections to the PSR.  "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant."  *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).  Based on that drug quantity, Charlton's base offense level was determined to be 30.  (ECF No. 82, ¶ 52).  After a three-level reduction for acceptance of responsibility, Charlton's total offense level was determined to be 27. (*Id*., ¶¶ 59-61).  Charlton had a criminal history score of two, placing him in criminal history category II.  (*Id*., ¶ 78).  The statutory maximum term of imprisonment on each count is four years. (*Id*., ¶ 107).  Based upon a total offense level of 27 and a criminal history category of II, Charlton's advisory guideline range was determined to be 78 to 97 months imprisonment.  (*Id*., ¶ 108).  Each count of conviction under 21 U.S.C. § 843(b) carried a statutory maximum penalty of up to four years' imprisonment (for a total of up to eight years or 96 months on two counts).  *See* 21 U.S.C. § 843(d)(1).  Charlton was clearly advised of this in his Plea Agreement (ECF No. 54, ¶ 10), at his change of plea hearing (ECF No. 136, p. 9), and in the PSR (ECF No. 82, ¶ 107).  Because the appropriate guideline range exceeded the statutory maximum for the two counts of conviction, the Guidelines instructed the Court to impose consecutive sentences on separate counts as necessary to achieve a total term of imprisonment within the guidelines range.  (ECF No. 82, ¶ 108) (citing U.S.S.G. § 5G1.2(d)) ("If the sentence imposed on the count carrying the highest maximum is less

than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."); *see also United States v. Mercer*, Nos. 2:07-CR-20167, 2:09-CV-13350, 2010 WL 2104262, at *6 (E.D. Mich. Apr. 20, 2010) (defendant not entitled to relief on sentencing related ineffective assistance of counsel claims for failure to articulate a grouping argument at sentencing).

Thus, any objection to the Court's imposition of consecutive sentences to achieve the appropriate total punishment would have been futile, and counsel cannot be deemed ineffective for failing to raise such an objection.

## C.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen*, 114 F.3d at 703 (quoting *Voytik*, 778 F.2d at 1308).  Such are the circumstances in this case.  Accordingly, the summary dismissal of Charlton's § 2255 Motion without an evidentiary hearing is recommended.

## D.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present.  *Slack v. McDaniel*, 529

U.S. 473, 483-84 (2000).

Charlton has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III. Conclusion

For the reasons discussed above, it is recommended that Charlton's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 128) be **DISMISSED with PREJUDICE**.  It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of July 2018.

/s/ *Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE